IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>DANIEL CORREA-MORALES,<br><br>**Defendant.** | CRIM. NO. 25-227 (RAM) |

### AMENDED OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Daniel Correa-Morales' ("Defendant" or "Mr. Correa") *Motion Requesting Review of Detention Order and* De Novo *Detention Hearing* ("*Motion*"). (Docket No. 18). For the reasons set forth below, the Court **GRANTS** the *Motion* subject to the conditions specified herein and in the separate order of release.

### I. BACKGROUND

On May 6, 2025, a federal *Complaint* was filed against Mr. Correa for possession with intent to distribute various controlled substances and possession of a firearm in furtherance of a drug trafficking crime. (Docket No. 1). On May 8, 2025, a grand jury returned a five-count *Indictment* charging Mr. Correa with: (i) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); (ii) possession with intent to distribute cocaine, in violation of 21 U.S.C. §§

841(a)(1) and (b)(1)(C); (iii) possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (iv) possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and (v) possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (Docket No. 8). An initial detention hearing was held on May 12, 2025. (Docket No. 12). The magistrate judge ordered Mr. Correa be detained pending trial on May 20, 2025. (Docket No. 15). In her order, she found that no condition or combination of conditions of release could reasonably assure Mr. Correa's appearance before the Court. Id. In making this decision, the magistrate judge considered the strong weight of the evidence against Mr. Correa, the possible sentence he could face if convicted, and his lack of stable employment. Id. at 2.

Mr. Correa subsequently filed the *Motion* on July 1, 2025, requesting a *de novo* detention hearing. (Docket No. 18). He contends that although the charged offenses carry a rebuttable presumption of detention under § 3142(e)(3)(A)-(B), he does not pose a risk of flight or danger to the community and there are conditions of release that could be crafted to ensure his appearance before the Court and protect the community. Id. at 2. The Court held a *de novo* hearing on August 5, 2025. (Docket No. 26). At the hearing, the Government and defense counsel made their proffers. Id.

## II. FINDINGS OF FACT

The below findings of fact are drawn only from the information, exhibit, and testimony presented at the *de novo* hearing conducted on August 8, 2025. These findings of fact have been made solely for the purpose of deciding the pending *Motion*. *See* 18 U.S.C. § 3142(j).

### A. Proffer by the Government

The Government proffered that Mr. Correa should be detained because the § 924(c) count against him carries a presumption of detention, the strength of the evidence against him is strong, and he is a danger to the community. Mr. Correa was arrested after Puerto Rico Police Bureau agents saw him engaged in an alleged drug transaction in the San Martin Public Housing Project (PHP). After someone in the vicinity yelled "*agua*" (slang for "the police are here"), Mr. Correa ran from the police and did not heed their instructions; he was eventually apprehended on the third floor of a nearby building within the PHP. At that time, the police retrieved: (i) a black fanny pack containing $230 in cash; (ii) a black purse containing thirty-two bags that preliminarily tested positive for cocaine, 219 vials of crack cocaine, four bags which preliminarily tested positive for marijuana, eighteen decks that preliminarily tested positive for heroin, ten pills, and twelve containers of a leafy green substance; and (iii) a black backpack containing two black rifle magazines, fifty-five rounds of 7.62

...

caliber ammunition, and a loaded AK pistol, model micro-Draco, 7.62 caliber, with the serial number ROA22PMO28663. (*See* Docket No. 1-1). The Government also submitted an exhibit displaying the contents of the bags found in Defendant's proximity at the time he was apprehended by the police, including a walkie-talkie. Mr. Correa was later arrested. The AK pistol was preliminarily tested and found likely to be an automatic firearm; it has since been sent to a laboratory for an in-depth analysis to confirm this. The Government also noted that the AK pistol is connected to a 2024 homicide in San Juan.

The Government argued Mr. Correa poses a danger to the community based on the significant amount of drugs found on his person or near him when he was apprehended at the PHP and his possession of a firearm that preliminarily tested as a machinegun. It did not address whether Mr. Correa posed a risk of flight.

### B. Proffer by Defendant

Mr. Correa's counsel argued that the statutory presumption against Mr. Correa can be rebutted, her client does not pose a risk of flight or danger to the community, and adequate conditions for his release can be fashioned. First, defense counsel argued that Mr. Correa's personal characteristics show that he does not pose a risk of flight. He is twenty-four years old with no criminal history, including no previous arrests or infractions before the instant offense. He has a long history of employment since

graduating high school, including five years at a waste company followed by a stint at a trucking company. He is in a long-term relationship with his girlfriend, who appeared in court alongside various family members to support him. Mr. Correa and his girlfriend have two minor children; his girlfriend has full-time employment and is willing to serve as Mr. Correa's Third-Party Custodian. His family members all have stable employment and are prepared to support him in the event he is released.

Mr. Correa has lived in Puerto Rico his entire life and has resided in the San Martin PHP for twelve years. He does not have a passport and his entire family resides on the island. Mr. Correa does not have significant assets but has several loans, including a $9,000 car loan he is behind on. He consumes marijuana, but Mr. Correa's counsel asserted that he holds a medical marijuana license to do so. He did run from the police at the San Miguel PHP, but went directly to his own apartment, where he was apprehended. Although he faces a lengthy prison term if convicted, this is true for many defendants before this Court who face mandatory minimum sentences. In short, his personal traits favor release, particularly as he has many ties to the area that give him reason to comply with any terms of release the Court may construct.

Second, defense counsel argued that the Government has not sufficiently shown Mr. Correa poses a danger to his community or that pre-trial release would otherwise be inappropriate. Although

the offenses with which he was charged are serious, various discovery matters are still pending. Mr. Correa's past behavior does not support a finding that he will pose a serious harm to others in the future. His education, history of employment, and lack of a previous criminal record weigh in his favor.

Finally, Mr. Correa's counsel suggested various conditions of release. His in-laws[1] have offered to house him on their property outside Trujillo Alto that is at least a twenty-minute drive from the San Martin PHP. Mr. Correa would have a separate area to live with his two children, and his father-in-law would help him get a job at his employer, Caribbean All Metal, upon release. His girlfriend is willing to serve as Third-Party Custodian.

### III. LEGAL STANDARD

**A. Standard of Review For a Detention or Release Order**

A district court reviews a magistrate judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Cidraz-Santiago, 18 F.Supp. 3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Id.

---

[1] Although Mr. Correa and his girlfriend are not married, defense counsel refers to the girlfriend's parents as Mr. Correa's in-laws; the Court follows suit.

**B. The Bail Reform Act**

Pursuant to the Bail Reform Act of 1984, a judicial officer must determine whether a person charged with an offense shall be detained or released pending trial. *See* 18 U.S.C. § 3142(a). Section 3142(e) of the Bail Reform Act provides that if, after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." Id. § 3142(e). As Mr. Correa faces one count of violating 18 U.S.C. § 924(c) and three counts of violating a provision of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, for which a maximum term of ten years or more is prescribed, there is a statutory presumption in favor of detention "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *See* 18 U.S.C. §§ 3142(e)(3)(A)-(B). A grand jury indictment alone suffices to trigger this presumption. *See* United States v. Vargas-Reyes, 220 F.Supp. 3d 221, 225 (D.P.R. 2016) (citing, *inter alia*, United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986)).

Once triggered, the § 3142(e)(3) presumption imposes on the defendant a burden of production. *See* id. The defendant may satisfy the burden of production by introducing at least some evidence

contrary to the facts presumed. Id. This burden "is not heavy." Id. Notably, the burden of persuasion always rests with the Government in both presumption and non-presumption cases. Id. However, the § 3142(e)(3) presumption does not simply vanish once a defendant has produced some evidence. *See* United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987); United States v. Jessup, 757 F.2d 378, 383-84, 387 (1st Cir. 1985). Instead, judges must keep the presumption in mind as an additional factor to the four listed in § 3142(g). *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d at 383-84, 387.

The standard of proof for detention on the grounds of dangerousness is clear and convincing evidence. 18 U.S.C. § 3142(f). Clear and convincing evidence is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Acevedo-Ramos, 600 F.Supp. 501, 509 (D.P.R. 1984) (citations omitted), *aff'd*, 744 F.2d 203 (1st Cir. 1985) (Breyer, J.). This standard requires "a high degree of certainty that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice." Id. On the other hand, the standard of proof for detention on the grounds of risk of flight is preponderance of the evidence. United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

To determine whether there are conditions of release that assure a defendant's appearance and the safety of the community,

judicial officers must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

## IV.  DISCUSSION

After considering the proffers of counsel, the evidence presented, the arguments of the parties, the Pretrial Services Report, and the transcript of the *de novo* detention hearing, the Court finds that the Government has not proven by the relevant standards that no conditions of release could reasonably assure the safety of the community and Defendant's appearance.

### A. The Nature and Circumstances of the Offense Charged

As discussed above, Mr. Correa was charged with one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and four counts of possession with intent to distribute various controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)-(D). (Docket No. 8). These are serious offenses. *See*, *e.g.*, United States v. Miranda, Criminal No. 12-256, 2021 WL 4592528, at *9 (D.P.R. Aug. 30, 2021) (noting that the defendant had "committed several serious crimes, including crimes involving drugs, [and] firearms"); United States v. Worthy, 772 F.3d 42, 48 n.8 (1st Cir.

2014) (the First Circuit has "consistently held that, '[b]y their very nature, drugs-for-profit offenses are extremely serious'"). If convicted, he faces up to twenty years' imprisonment. *See* 18 U.S.C. § 841(b)(1)(C). This factor favors continued detention.

**B. The Weight of the Evidence Against Defendant**

The weight of the Government's evidence for bail purposes derives from its proffer and exhibit showing the items Mr. Correa possessed or was in proximity to at the time he was apprehended by law enforcement. The Court notes that the federal grand jury found probable cause by returning an indictment against Mr. Correa. At this stage, there is no evidence presented before the Court that is "inconsistent with a finding of guilt." United States v. Diaz-Collazo, Criminal No. 17-504, 2018 WL 377277, at *2 (D.P.R. Jan. 11, 2018 (citing United States v. Gray, 529 F.Supp. 2d 177, 181 (D. Mass. 2007)). This factor favors detention.

Regardless of the import or weight of the evidence proffered by the Government, the Court is not concerned with Mr. Correa's guilt or innocence at this time. *See* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence."). The Court's task is to assess whether there is a set of conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c).

**C. Defendant's Personal History and Characteristics**

Mr. Correa is twenty-four years old and has resided in Puerto Rico his entire life, twelve years of which were spent at the San Martin PHP. As detailed in the Pre-Trial Services Report, Defendant's parents and two of his siblings live in Puerto Rico while one sibling lives in Florida. (Docket No. 10 at 2). He is a Spanish speaker with no fluency in the English language. Id. He has a long-term relationship with his girlfriend, whom he has lived with for eight years and shares two young children. Id. at 3. He appears to be a present partner and father and has a significant work history dating back to his graduation from high school. However, he is currently unemployed, frequently gambles, and owes approximately $11,564.00 in debt. Id. at 4. He consumes marijuana daily, although defense counsel avers he holds a medical marijuana card. Id. During his *de novo* hearing, defense counsel indicated that Mr. Correa's in-laws could provide him with housing outside the San Martin PHP and help him secure employment if he is granted release. No bail resources have been identified, and Mr. Correa has little in the way of assets. Mr. Correa has no criminal history. He does not hold a passport.

Together, Mr. Correa's personal history and characteristics indicate that he is unlikely to be a risk of flight or danger to his community, favoring release. Particular factors mitigating the risk of flight are that Defendant resides in Puerto Rico, is a

father of young children, lacks access to significant cash or other assets, lacks strong ties to areas outside Puerto Rico, and has family members willing to assist him with housing and employment. *See* United States v. Torres-Rosario, 600 F.Supp. 2d 327, 335 (D.P.R. 2009).

### D. The Nature and Seriousness of the Danger to Any Person or the Community That Would be Posed by Defendant's Release

While Mr. Correa is accused of a serious offense, the Court nevertheless finds that there are conditions of release that can reasonably assure the safety of the community and Defendant's appearance as required in this case. These conditions include, but are not limited to, submitting to home detention with electronic monitoring, posting a $50,000 unsecured bond, and submitting to supervision by an approved third-party custodian. **The Defendant is warned that failure to comply with the conditions of release in this case will trigger revocation proceedings and, potentially, result in a return to pretrial detention.** *See* Torres-Rosario, 600 F.Supp. 2d at 336 (permitting release under "highly stringent release conditions" and noting that "deviation from [the release order] will result in an immediate revocation [of defendant's] liberty").

Mr. Correa's consensual partner, Minette Rodriguez, has offered to serve as his Third-Party Custodian. His mother-in-law, Geovanka L. Melendez-Vives, has also been qualified as a Third

Party Custodian by the U.S. Probation Office. Consequently, the Court find that Ms. Rodriguez and Mrs. Melendez-Vives may serve as Third-Party Custodian with the approval of the U.S. Probation Office, provided Mr. Correa resides with his father-in-law and mother-in-law and that their residence is found suitable by the U.S. Probation Office and is not located within the San Martin Public Housing Project.

## V. CONCLUSION

For the foregoing reasons, the Defendant's *Motion Requesting Review of Detention Order and* De Novo *Detention Hearing* at Docket No. 18 is **GRANTED**. Defendant Daniel Correa-Morales shall be released subject to the following conditions:

1. Defendant must not violate federal, state, or local law while on release.

2. Defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

3. Defendant must advise the Court, the U.S. Probation Office, or the supervising officer in writing before making any change of residence or telephone number.

4. Defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the Court may impose.

5. Defendant will execute an unsecured bond binding Defendant to pay the United States the sum of $50,000 dollars in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

6. Defendant will submit a proposed third-party custodian, as approved by the U.S. Probation Office, who resides outside of the San Martin Public Housing Project. The

   third-party custodian must agree to (a) supervise Defendant, (b) use every effort to assure his appearance at all court proceedings, (c) notify the Court immediately if Defendant violates a condition of release or is no longer in the custodian's custody, and (d) surrender any firearms he or she might possess. Defendant shall reside with his in-laws.

7. Defendant shall submit to location or electronic monitoring as directed by the U.S. Probation Office or supervising officer and comply with all the program requirements and instructions provided.

8. Defendant's release is conditioned upon qualification of the third-party custodian and an appropriate residence, as well as verification by the United States Probation Office of electronic monitoring device capability in the proposed residence.

9. Home detention with electronic monitoring: Defendant shall be restricted to his in-law's residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the U.S. Probation Officer.

10. Defendant shall continue or actively seek employment.

11. Defendant shall maintain or start an education program.

12. Defendant shall submit to supervision by and report for supervision to the U.S. Probation Office.

13. Defendant shall surrender any passport to the U.S. Probation Office.

14. Defendant shall not obtain a passport or other international travel document.

15. Defendant shall reside at the address of record that is approved by the U.S. Probation Office.

16. Defendant shall not leave the jurisdiction of this District without first obtaining written permission from the Court.

17. Defendant shall avoid all contact directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution.

18. Defendant shall permit access by the U.S. Probation Office, the supervising officer, and the third-party custodian to any computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communication devices in his possession to ensure compliance with the conditions of release.

19. Defendant shall undergo medical or psychiatric treatment if deemed necessary by the U.S. Probation Office.

20. Defendant shall refrain from possessing firearms, destructive devices, or other dangerous weapons.

21. Defendant shall refrain from excessive use of alcohol.

22. Defendant shall refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

23. Defendant shall submit to testing for a prohibited substance if required by the U.S. Probation Office or the supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. Defendant must not obstruct or attempt to obstruct, or tamper with, the efficiency and accuracy of prohibited substance screening or testing.

24. Defendant shall participate in a program of inpatient or outpatient substance abuse therapy and counseling as deemed necessary by the U.S. Probation Office or the supervising officer.

25. Defendant shall report as soon as possible any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop to the U.S. Probation Office or the supervising officer.

26. The Chief U.S. Probation Officer or his designee may authorize temporary changes of address and overseas travels to the mainland United States only, not

      exceeding fifteen calendar days, provided the U.S. Attorney has no objection to it. If objected, the request must be made in writing to the Court.

27. Defendant shall not enter any airport or pier with the exception stated above.

28. Defendant shall not enter or remain at the San Martin Public Housing Project.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of August 2025.

                                        s/Raúl M. Arias-Marxuach
                                        UNITED STATES DISTRICT JUDGE